## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re: Civil Investigative Demand
No. WDMI-CID-25-0031

Case No. 25-MC-_____

Ronald G. DeWaard (P44117)
Regan A. Gibson (P83322)
VARNUM LLP
Attorneys for Petitioner
P.O. Box 352
Grand Rapids, MI 49501-0352 (616) 336-6000
rgdewaard@varnumlaw.com
ragibson@varnumlaw.com

### PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND

NOW COMES Christine Shellenbarger, by and through her attorneys, Varnum LLP, and pursuant to 31 U.S.C. Section 3733(j)(2)(A), petition this Court to set aside the Civil Investigative Demand ("CID") issued by the United States Attorney's Office for the Western District of Michigan.  The CID must be set aside because Ms. Shellenbarger is currently a subject of a criminal investigation involving the matters covered by the CID and has asserted her privilege against self-incrimination under the Fifth Amendment of the United States Constitution in response to the requests.  In support of this petition, Ms. Shellenbarger states as follows:

#### A.      FACTUAL BACKGROUND

1.      Christine Shellenbarger is crop insurance agent (also called a "producer") affiliated with Spartan Insurance, LLC.  Ms. Shellenbarger has worked as a crop insurance agent for nearly forty years.

2.      Ms. Shellenbarger operates as an independent contractor working on certain accounts for Spartan Insurance Agency, LLC ("Spartan"). *See* **Exhibit A,** Shellenbarger Decl. ¶¶ 4-5.

3.      While Ms. Shellenbarger contracts with Spartan under the name CMS Ag Risk Management, that entity is not active. *Id.* at ¶ 6.

4.      In her role as a crop insurance agent, Ms. Shellenbarger works with farmers throughout West Michigan to apply for crop insurance and navigate the claims process for multi-peril crop insurance policies.

5.      These policies are backed by the Federal Crop Insurance Corporation, a wholly owned government corporation administered by the United States Department of Agriculture.

6.      Farmers purchase crop insurance policies via insurance agents like Ms. Shellenbarger.  The federal government subsidizes the insurance premiums.

7.      Farmers apply for crop insurance policies at the beginning of the season based on acreage planted and expected yields.  If, at the end of a season, a farmer experiences an eligible loss that causes a lower crop yield that anticipated, the farmer can submit a claim on its policy to cover the losses.  While the payout is made by the insurance company, that insurance company is reinsured by the government, which covers a portion of the losses paid out to farmers.

8.      For many years, Ms. Shellenbarger has served as the insurance agent for various farming entities owned by Dennis Boersen, Stacy Boersen, and later their son, Nicholas Boersen. Dennis Boersen's farming entities include, but are not limited to, Great Lakes Grain, LLC, Boersen Farms Grain, Boersen Farms Ag, Boersen Ag Partners, and other entities.  Stacy Boersen was a partner in Boersen Farms Grain and Great Lakes Grain.  Stacy and Nicholas Boersen have farmed via New Heights Farm I, LLC and New Heights Farm II, LLC.

9.      In March of 2021, Ms. Shellenbarger was interviewed by an agent of the Special Investigations Staff and a Compliance Investigator from the USDA's Risk Management Agency ("RMA") regarding claims submitted by Boersen entities.

10.     Three months later, in June 2021, USDA-OIG agents executed search warrants at Ms. Shellenbarger's home and office, as well as several locations affiliated with the Boersens.

11.     Ms. Shellenbarger learned that the Boersens and their various farming entities were under criminal investigation in connection with claims to federally-backed crop insurance programs.  She also learned that, as the Boersen's insurance agent, she is under criminal investigation as well.

12.     The investigation has continued for the last four years, with no charges having been filed to date.  As of March 2025, Ms. Shellenbarger, via undersigned counsel, was advised by the AUSA who is overseeing the criminal investigation on behalf of U.S. Attorney's Office for the Western District of Michigan that the criminal investigation of Ms. Shellenbarger remains ongoing.

**B.      CIVIL INVESTIGATIVE DEMAND WDMI-CID-0031.**

13.     On or about April 9, 2025, Ms. Shellenbarger received a copy of CID No. WDMI-CID-25-0031.  *See* **Exhibit B, CID**.  The CID advised that the U.S. Attorney's Office for the Western District of Michigan had initiated a False Claims Act ("FCA") investigation into "allegations of, *inter alia*, the submission of false claims by Stacy Boersen (d/b/a New Heights Farm I d/b/a Great Lakes Grain) and Nicholas Boersen aka Nick Boersen (d/b/a New Heights Farms II) to crop insurance companies for multi-peril crop insurance covered by the Federal Crop Insurance Corporation." *Id.* at 1.

14.    The CID was addressed to and served on Ms. Shellenbarger in her personal capacity.

15.    The CID seeks the production of documents for the period of January 18, 2018 to the present, as follows:

- All communications between [Ms. Shellenbarger] and Stacy Boersen, Nicholas Boersen, and Dennis Boersen related to crop insurance administered by the Federal crop insurance corporation, including, but not limited to, letters, memorandums[sic] emails, voice mail messages, and text messages between you and Stacy Boersen, Nicholas Boersen, and/or Dennis Boersen, including, without limitation, any emails to or from the CShell58@hotmail.com email account.

- All communications between [Ms. Shellenbarger] and Dennis Boersen, Stacy Boersen, and Nicholas Boersen related to Dennis Boersen, Stacy Boersen, and Nicholas Boersen conducting farming operations on farm property lease under the names of Great Lakes Grain, New Heights Farm I, and New Heights Farm II.  Such communications include, but are not limited to, letters, memorandums[sic], emails, voice mail messages, and text messages between [Ms. Shellenbarger] and Janelle Warnemuende (in her capacity as insurance agent), Dennis Boersen, Stacy Boersen, and/or Nicholas Boersen, including, without limitation, emails from the CShell58@hotmail.com email account." *Id.* at 6.

16.    The CID demanded production of the requested documents by May 5, 2025.

17.    On April 21, 2025, AUSA Carrie Almassian agreed to extend the deadline for Ms. Shellenbarger to respond to the CID until June 4, 2025.

18.    On May 29, 2025, AUSA Almassian agreed to a further extension of the deadline until June 10, 2025. *See* **Exhibit C, E-mail.**

19.    On June 4, 2025, undersigned counsel advised AUSA Almassian that Ms. Shellenbarger was asserting the Fifth Amendment in response to the CID.  *See id.*

20.    On June 9, 2025, AUSA Almassian advised that the government would pursue enforcement of the CID notwithstanding Ms. Shellenbarger's assertion of the Fifth Amendment.

*See id.*  AUSA Almassian further agreed that to extend the deadline for Ms. Shellenbarger to file

this petition until June 18, 2025. *Id.*

      **C.**    **MS. SHELLENBARGER IS ENTITLED TO INVOKE HER FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION IN RESPONSE TO THE CID.**

    21.    Under 31 U.S.C. § 3733(j)(3)(A), a person issued a civil investigative demand may

file a petition for an order to set aside the demand.

    22.    The petition must be filed (1) within the earlier of 20 days of the service or the

return date, or (2) "within such longer period as may be prescribed in writing by any false claims

investigator identified in the demand." 31 U.S.C. § 3733(j)(3)(A).

    23.    This petition was filed within the period prescribed in writing by AUSA Carrie

Almassian. *See* Ex. B.

    24.    The Fifth Amendment to the United States Constitution provides that "[n]o person

. . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend.

V.  The privilege "applies equally to both civil and criminal proceedings." *In re Flint Water Cases*,

53 F.4th 176, 192 (6th Cir. 2022).  The privilege "must be accorded liberal construction in favor

of the right it was intended to secure."  *Id.* at 192-93 (citing *Hoffman v. United States*, 341 U.S.

479, 486 (1951)).  The Fifth Amendment privilege extends to statements that, while not themselves

incriminating, "would furnish a link in the chain of evidence needed to prosecute the [answering

party]." *Ohio v. Reiner*, 532 U.S. 17, 20 (2001) (per curiam).  "It need only be evident from the

implications of the question, in the setting in which it is asked, that a responsive answer to the

question . . . might be dangerous because injurious disclosures could result." *Id.* at 20-21.

    25.    The privilege against self-incrimination applies to the compelled production of

documents as well as to oral testimony.  In evaluating an assertion of the Fifth Amendment

privilege in connection with a document request, the Court engages in a two-part inquiry to determine whether the privilege applies, evaluating whether (1) whether the party asserting the privilege has shown that the production of the documents will be incriminating, and (2) whether the production of the documents is "testimonial." *See United States v. Doe*, 465 U.S. 605, 612 (1984).

### 1.  The Production of the Requested Documents Is Incriminating.

26.    With regard to the first factor, there is no doubt that the production of the documents may be incriminating. The production of previously-prepared business communications may be incriminating in three ways: (1) by acknowledging the documents exist; (2) by acknowledging that they are in the control of the person producing them; or (3) by acknowledging that the person producing them believes they are the documents requested and thereby authenticating them for purposes of Fed. R. Evid. 901.  *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir. 1985).

27.    It is undisputed that the Boersens and Ms. Shellenbarger are currently under criminal investigation related to claims submitted to federally-backed crop insurance programs for Great Lakes Grain, New Heights Farm I, and New Heights Farm II.  The CID seeks communications regarding these same entities and insurance claims.  While the investigation has been ongoing for several years at this point, undersigned counsel received verbal and written confirmation as recently as March 2025 that the criminal investigation against Ms. Shellenbarger remains ongoing.

28.    Any documents produced in response to the CID are highly likely to be provided to the team conducting the criminal investigation against Ms. Shellenbarger, which is also being conducted by the U.S. Attorney's Office for the Western District of Michigan.

6

29.    While Ms. Shellenbarger vehemently denies any wrongdoing, she certainly has reason to believe that any production of documents made in this matter will be used against her if a criminal case is ever brought, and, at the very least, will form a "link in the chain of evidence" needed to prosecute her.  Accordingly, she has met her burden to demonstrate that the production of the documents would be incriminating. [1]

### 2.    The Production of the Documents Is Testimonial.

30.    The Supreme Court has held that the act of production of documents may be "testimonial" for the purposes of the Fifth Amendment where "it is akin to answering interrogatories or responding to a series of questions at a discovery deposition, that is, were the witness is asked to 'make extensive use of his own mind' identifying the documents requested in the government's subpoena." *United States v. Sabit*, No. 14-MC-50155, 2014 WL 131082 at *2 (E.D. Mich. Apr. 1, 2014) (citing *United States v. Hubbell*, 530 U.S. 27, 41-43 (2000)).  Where the government cannot identify the existence and location of the documents with reasonable particularity, the act of production is "testimonial." *Hubbell*, 530 U.S. at 41.

31.    In contrast, the Supreme Court has found that when a witness produces a document that the government knows exists, the act of production is tantamount to a "surrender" and is not "testimonial." *Fisher v. United States,* 425 U.S. 391, 410 (1976) (finding that the production of tax records was not "testimonial" where the government subpoenaed accountants' papers which it knew were in the hands of the taxpayer's lawyers).

32.    *Sabit* is instructive here.  In that case, the government sought to enforce a CID to a physician seeking (1) email communications between the physician and a medical device company

---

[1] Ms. Shellenbarger is willing to produce any communications responsive to the subpoena to the Court for review *in camera*.

that was the target of the FCA investigation for the period of 2009-2014; (2) medical records of patients on whom the physician used medical devices made by the company; and (3) audio recordings of interviews provided by the physician to the California medical board. *Sabit*, 2014 WL 131082 at *3.

33.    Relevant to this case, the request for email communications sought, "documents concerning communications or meetings between you and [medical device company], or between you and any actual or potential [medical device company] investor." *Id.*  The government argued that it had identified the documents with reasonable particularity because it "identified the e-mail account from which Sabit sent and received e-mails" and their production was therefore not "testimonial." *Id.* at *4.

34.    The court disagreed, noting that, "[t]he government could likely identify an e-mail address for anyone; this does not make the production of all e-mails non-testimonial." *Id.* The court found that asking the physician to sift through his emails to identify individuals affiliated with the medical device company "would require [him] to use the contents of his mind and is akin to answering written interrogatories or answering oral questions at a discovery deposition would[sic] be constitutionally protected by the Fifth Amendment." *Id.*  Ultimately, the Court modified the CID to set aside the request for email communications.  *Id.*

35.    Here, the production of the documents is clearly testimonial.  While the government seeks "communications" with and about the Boersens, the CID identifies only broad categories of *potential* communications sent or received during a seven-year period, including "letters, memorandums[sic], voice mail messages, and text messages" "related to crop insurance administered by the Federal Crop Insurance Program." Ex. A at 6.  While the government may *suspect* that such communications exist, given that Ms. Shellenbarger acted as the insurance agent

for various Boersen entities for a number of years, the government has not identified particular communications that it seeks.

36.    Rather than identify communications sought with reasonable particularity, the CID instead seeks to have Ms. Shellenbarger search for and identify any responsive documents for the government.  In order to identify which communications are responsive to the CID (i.e. are both communications with the identified recipients *and* relate to the designated subject matter), Ms. Shellenbarger would be forced to "use the contents of her mind" in a way that is akin to responding to an interrogatory asking her to identify all communications with the Boersens concerning the relevant topics.  This is even more apparent with regard to communications with Janelle Warnemunde, who, in addition to working as Ms. Shellenbarger's assistant for many clients besides the Boersens, is also Ms. Shellenbarger's daughter.

37.    Because Ms. Shellenbarger would be required to sift any through any emails, text messages, and other communications to determine, which, if any, would be responsive to the CID, the act of producing the requested documents is "testimonial" based on the standard outlined in *Hubbell*.  Ms. Shellenbarger is therefore entitled to assert her Fifth Amendment privilege against self-incrimination and the CID must be set aside.

### 3.  The Production Is Not Subject To The Business Records Exception.

38.    In response to Ms. Shellenbarger's assertion of the Fifth Amendment, AUSA Almassian indicated the government's belief that the communications sought are subject to the "business records" exception because they were made in connection with Shellenbarger's position as "an agent for Spartan Insurance."  *See* Ex. C.  This exception does not apply.

39.    While the Supreme Court has held that the contents of business records prepared voluntarily are not subject to the Fifth Amendment, the act of *producing* the documents may still

be found to be testimonial and subject to protection. *See United States v. Doe*, 465 U.S. 605, 613 (1984).  In *Doe*, the Court held that a business owner of a sole proprietorship was entitled to assert the Fifth Amendment in response to a Grand Jury subpoena because any production would necessarily be an admission in his individual capacity that the requested documents exist, are in his possession, and are authentic. *Id.*

40.     Here, the CID was sent to Ms. Shellenbarger in her personal capacity; it is not a request directed to Spartan Insurance.  *See* Ex. B.  The CID does not seek applications or claims records related to any claims by the Boersen entities.  Instead, the government is attempting to compel the production of communications that it suspects exist, sent to and from Ms. Shellenbarger on her personal email address and via her personal cell phone.[2]

41.     Ms. Shellenbarger is not an employee of Spartan; rather, she contracts with Spartan to provide insurance services under the name CMS Ag Risk Management.  Ex. A at ¶¶ 4-6.  If she produced the communications requested, Ms. Shellenbarger would not be acting as a custodian on behalf of Spartan; she would be producing her own communications from her own personal e-mail accounts and cell phone, as an independent contractor outside of the Spartan umbrella.  Like the individual at issue in *Doe*, a production of the requested records would necessarily be a production by herself, in an individual capacity.  *See also Government Employees Ins. Co. v. Kalitenko¸* No. 22-cv-3804(ARR), 2023 WL 112803 at *4-*6 (E.D.N.Y. Jan. 5, 2023) (finding that while a business entity could not assert the Fifth Amendment, physician subpoenaed in his individual capacity and in capacity as owner of sole proprietorship was entitled to assert the Fifth Amendment in response to a subpoena for voluntarily-prepared business records because production would

---

[2] Similarly, these communications are not subject to the "required records" exception because they are not "required by law to be kept or disclosed to a public agency." *In re Grand Jury Subpoena Duces Tecum*, 105 F.3d 659 (6th Cir. 1997) (Table).

reveal his knowledge of their existence and his control over the documents).  Thus, the business records exception is inapplicable to the requests at issue in this case.

WHEREFORE, for the foregoing reasons, Ms. Shellenbarger respectfully requests that this Court enter an order setting aside CID No. WDMI-CID-0031.

Respectfully Submitted,

VARNUM LLP
Attorneys for Petitioner

Dated: June 18, 2025

By:   */s/ Regan A. Gibson*
        Ronald G. DeWaard (P44117)
        Regan  A.  Gibson  (P83322)
        P.O. Box 352
        Grand Rapids, MI 49501-0352
        (616) 336-6000
        rgdewaard@varnumlaw.com
        ragibson@varnumlaw.com