UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CHRISTINE SHELLENBARGER,                          Case No. 1:25-mc-77

              Petitioner,

v.                                                Hon. Sally J. Berens
                                                  U.S. Magistrate Judge
UNITED STATES ATTORNEY'S OFFICE
FOR THE WESTERN DISTRICT OF MICHIGAN,

              Respondent.
_____/

## THE GOVERNMENT'S RESPONSE TO SHELLENBARGER'S PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND

### INTRODUCTION

On April 2, 2025, the United States of America, on behalf of the United States Department of Agriculture (USDA), Farm Services Agency (FSA), issued a Civil Investigative Demand (CID) to Christine Shellenbarger. Shellenbarger, a crop insurance agent acting in her professional capacity for Spartan Insurance, LLC (Spartan Insurance), now petitions the Court to set aside the CID by invoking the Fifth Amendment privilege against self-incrimination. Her effort to avoid compliance is misplaced. The act of producing the documents requested in the CID is a "foregone conclusion," and not a testimonial act the Fifth Amendment protects because the government can establish the existence, location, and authenticity of Shellenbarger's emails requested. The CID targets a defined category of communications associated with Shellenbarger's email account that the government knows exist and the government can authenticate the emails through another source. Shellenbarger's blanket assertion of the Fifth Amendment privilege is also legally insufficient. Rather, courts require that asserting the Fifth Amendment with respect to the act of production must be asserted on a document-by-document basis. Shellenbarger's Fifth Amendment

claim fails both substantively and procedurally. The Court should deny her petition to set aside the CID.

## BACKGROUND

### I.    FSA program background.

The Federal Crop Insurance Corporation (FCIC) is a wholly owned government corporation within the USDA that reinsures private crop insurance policies. Created by the Federal Crop Insurance Act, 7 U.S.C. § 1501, *et seq.*, the FCIC promotes national welfare "by improving the economic stability of agriculture through a sound system of crop insurance." 7 U.S.C. § 1502. The Risk Management Agency administers the Federal Crop Insurance program on behalf of the FCIC. The USDA Risk Management Agency authorizes certain private insurance companies to write crop insurance policies. The Risk Management Agency also sets the rates that can be charged for crop insurance policies and determines which crops can be insured in different parts of the country. The federal government subsidizes the farmer-paid premiums to reduce the cost to farmers. The Risk Management Agency pays approved insurance providers to cover the administrative and operating expenses (A&O) of providing crop insurance. This federal support keeps crop insurance affordable to farmers.[1] *See* 5 U.S.C. § 1502(a).

The FSA provides benefits to farmers including Commodity Credit Corporation (CCC) programs. These include the Price Loss Coverage (PLC) program, which issues payments when the effective price of a covered commodity is less than the respective reference price for that commodity, and the County Agriculture Risk Coverage (ARC-CO), a program that issues

---

[1] *See* https://www.ers.usda.gov/topics/farm-economy/farm-commodity-policy/title-xi-crop-insurance-program-provisions (last visited July 7, 2025).

payments when the actual county crop revenue of a covered commodity is less than the program's guarantee for the covered commodity.

Through these programs, farmers purchase crop insurance policies. 7 C.F.R. § 457.2. The federal government subsidizes the insurance premiums. *See id*.

## II.    Shellenbarger's insurance work and regular use of personal email for official business.

Shellenbarger is a crop insurance agent for Spartan Insurance. (Pet. ¶ 1, ECF No. 1 PageID.1.) She contracted with Spartan Insurance under CMS Ag Risk Management, Inc., although Shellenbarger states that this entity is no longer active. (Shellenbarger Decl. ¶ 6, ECF No. 1-1, PageID.13.) Regardless, she admits that she independently contracts with Spartan Insurance to be an agent. (*Id*. ¶ 5.)

As an insurance agent, Shellenbarger assists farmers applying for crop insurance and "navigate[s] the claims process for multi-peril crop insurance policies. (*Id*. ¶ 4, PageID.12.) Shellenbarger has "served as the insurance agent for various farming entities owned by Dennis Boersen, Stacy Boersen, and Nicholas Boersen." (Pet. ¶ 8, ECF No. 1, PageID.2.) The farming entities include but are not limited to New Heights Farm I, LLC (New Heights I), and New Heights Farm II, LLC (New Heights II). (*Id*.)

In her role as the Boersen family's insurance agent, including New Heights I and New Heights II, Shellenbarger regularly provided her email address, CShell58@hotmailcom, on related documents. (*See, e.g.*, Ex. 1, Ins. Forms.) She used this email address to communicate with one of Spartan Insurance's owners, Michael Gaynier. (Ex. 2, Lucas Email.) Shellenbarger also communicated with a claims manager for Nau Country Insurance regarding New Heights I and II using her Hotmail address. (Ex. 3, Nau Country Ins. Emails.)

III.    **The CID to Shellenbarger.**

The government issued a CID to Shellenbarger on April 2, 2025. (CID, ECF No. 1-2, PageID.16-22.) The CID requested the following documents from January 18, 2018, to date:

> 1. All communications between you and Stacy Boersen, Nicholas Boersen, and Dennis Boersen related to crop insurance administered by the Federal Crop Insurance Corporation. Such communications include, but are not limited to, letters, memorandums, emails, voice mail messages, and text messages between you and Stacy Boersen, Nicholas Boersen, and/or Dennis Boersen, including without limitation any emails to or from the CShell58@hotmail.com email account.
>
> 2. All communications between you and Dennis Boersen, Stacy Boersen, and Nicholas Boersen related to Dennis Boersen, Stacy Boersen, and Nicholas Boersen conducting farming operations on farm property leased under the names of Great Lakes Grain, New Heights Farms I, and New Heights Farms II. Such communications include, but are not limited to, letters, memorandums, emails, voice mail messages, and text messages between you and Janelle Warnemuende (in her capacity as an insurance agent), Dennis Boersen, Stacy Boersen, and/or Nicholas Boersen, including without limitation any emails to or from the CShell58@hotmail.com email account.

(CID, PageID.21.)

## ARGUMENT

I.    **The Fifth Amendment does not apply to the CID where the act of producing the documents is non-testimonial because the existence, location, and authenticity of the documents is a forgone conclusion.**

The Court should deny Shellenbarger's petition because the act of producing documents in response to the CID is not testimonial and the Fifth Amendment does not apply. The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." This provision applies "when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The Supreme Court has made clear that the act of production is only testimonial when it would implicitly communicate statements of fact—such as the existence,

4

authenticity, or possession of the documents—in a way not already known to the government. *United States v. Hubbell*, 530 U.S. 27, 36-38 (2000); *Fisher*, 425 U.S. at 410. Known as the "forgone conclusion" doctrine, when the government can establish the existence of the documents and the individual's possession or control over them, and their authenticity, the act of production is not considered testimonial. *See United States v. Ponds*, 454 F.3d 313, 320 (D.C. Cir. 2006); *Fisher*, 425 U.S. at 411 ("[W]e do not believe that requiring a taxpayer to produce accountant's workpapers in his possession involves testimonial self-incrimination, since the existence and possession of the documents are a 'forgone conclusion.'"). The government need only demonstrate "with reasonable particularity that it knows of the existence and location" of the requested documents to establish a foregone conclusion. *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993). The government is 'not required to have actual knowledge of the existence and location of each and every responsive document." *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004). Rather, courts have applied the foregone conclusion doctrine to require the production of documents without requiring the government to demonstrate that it knew of the existence of each specific document it sought. *See United States v. Norwood*, 420 F.3d 888, 895 (8th Cir. 2005) (requiring the production of all documents relating to two credit cards and an account known to the government, including "account applications, periodic account statements, and charge receipts, all of which are possessed by the owners of financial accounts as a matter of course", but denying enforcement with respect to other accounts that were not known.); *United States v. Bright*, 596 F.3d 683, 692-93 (9th Cir. 2010) (applying the foregone conclusion doctrine to require production of documents relating to two credit cards that the government knew about prior to issuing its subpoena, but not for documents relating to two additional credits cards it learned about later).

The documents requested in the CID are a forgone conclusion and are not, therefore, testimonial. First, the documents requested in the CID clearly exist. The CID seeks known communications including from a known email address with a documented history of business use. The owner of Spartan Insurance communicates with Shellenbarger through her personal email, and the government possesses communications between Shellenbarger and Nau Country Insurance regarding New Heights I and II where Shellenbarger uses her personal email. (*See* Exs. 2-3.) Additionally, crop insurance forms listing Shellenbarger's personal email and communications between Shellenbarger and Spartan Insurance confirm her use of the email for crop insurance transactions. (Ex. 1.) The government's knowledge of some communications using the Hotmail account satisfies the "existence" requirement for additional documents associated with this account, even if the government has not identified each associated document. This is not a situation where the government is assuming emails regarding the Boersens and related entities exist—it already identified some specific communications in Exhibit 3.

Second, Shellenbarger has possession and control over the emails—she does not dispute that the email account belongs to her or claim that she no longer has access to it.

Third, communications sent and received through Shellenbarger's email account are easily authenticated through other sources. Courts' concern with authentication arises from the "implicit authentication [that] occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents." *United States v. Fox*, 721 F.2d 32, 38 (2d Cir. 1983). But where the documents can be authenticated by some other means, the production is no longer a "necessary link to incriminating evidence contained in the documents." *Id*. Here, the documents requested in the CID can be authenticated by other means, such as through the email recipient or a certification

from Microsoft, as the owner of Hotmail. *See* Fed. R. Evid. 902(11) (a certified domestic record of a regularly conducted activity accompanied by a "certification of the custodian or another qualified person" is self-authenticating); *see also United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (email records from conspiracy were admissible as self-authenticating under Rule 902(11) as all records included certificates stating that "Google or Yahoo! recorded the transmittal data automatically when users send emails, as part of the regular practice of a regular conducted business activity); *United States v. Spila*, 136 F.4th 1296, 1308 (4th Cir. 2025) (finding that the "district court did not err in authenticating the emails based on the Google certification").

Another concern regarding the compelled authentication of records arises when an individual's production of documents reveals her belief that the documents are the ones described in the subpoena. The Court in *Fisher* explained that compliance with a subpoena "tacitly concedes the existence of the papers demanded and their possession or control" by the record-holder, as well as indicating the "belief that the papers are those described in the subpoena." *Fisher*, 425 U.S. at 410 (citing *Curcuio v. United States*, 354 U.S. 118, 125 (1957)); *see also Hubbell*, 530 U.S. at 41-43 (equating a request for "any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to" Hubbell and his family to a series of interrogatories that would require Hubbell to make "extensive use of the contents of his own mind" (internal quotation marks omitted)); *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d at 912 (explaining that the government may  not compel a "witness to use his discretion in selecting and assembling the responsive documents"). The broader and more general and subjective the language of the subpoena, the more likely compliance is testimonial. *See In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994)

(finding that compliance with the subpoena would amount to a testimonial act "because of the broad-sweeping scope of the subpoenas").

Shellenbarger is not being asked to use the contents of her mind to identify unknown records or reconstruct vague transactions; she is being asked to produce communications from a known email account, to specifically identified persons, related to known crop insurance policies and business relationships, as well as other communications created in the ordinary course of business activity. The CID is limited to communications related to crop insurance between Shellenbarger and certain individuals (Dennis, Stacy, and Nicholas Boersen) and entities (New Heights Farm I and New Heights Farm II), regarding crop insurance and farming operations over a defined time including from her email account, CShell58@hotmailcom. (CID, ECF No. 1-2, PageID.16-22.) This is not a speculative request or a fishing expedition—the government has identified the email account by name, knows that Shellenbarger used it routinely for crop insurance business, and has evidence that this account was used in an official context, including on crop insurance forms and insurance applications. Under these circumstances, where the sender and recipient of an email exchange are known, and the context of their relationship is known (such as an ongoing agency relationship), then the act of producing those emails does not convey any new or incriminating testimonial information or incriminating information worthy of Fifth Amendment protection.

The government's ability to satisfy these three elements shows that the act of production does not compel any protected testimonial communication. The facts already known to the government undermine any claim that the existence of these communications is uncertain or that producing them would be testimonial. The Court should deny Shellenbarger's petition to set aside the CID.

II.    **Shellenbarger failed to make a document-by-document assertion of the Fifth Amendment.**

Blanket claims of Fifth Amendment privilege are disfavored. *See United States v. Dean*, 23 F. App'x 448, 450 (6th Cir. 2001) (rejecting a general banket assertion of the Fifth Amendment privilege). Rather, courts require a specific, document-by-document assertion of privilege to permit meaningful judicial review. *See id.* at 450 (confirming that the "act of production" privilege "applies only on a document-by-document basis, and the district court must individually review in camera any document to which a summoned party specifically objects"); *United States v. Gable*, 98 F.3d 251, 253 (6th Cir. 1996) (same).

Here, Shellenbarger failed to provide the required itemized privilege log, affidavit, or in camera submission that would allow the Court to evaluate the documents. Without such a showing, her assertion of privilege lacks legal foundation. If the Court is inclined to grant Shellenbarger's petition, the Court should conduct an in-camera review of the documents requested in the CID, which Shellenbarger is willing to do. (Pet. N.1, ECF No. 1, PageID.7.)

## CONCLUSION

For these reasons, the government requests that the Court dismiss Shellenbarger's request to set aside the CID.

Respectfully submitted,

ALEXIS M. SANFORD
Acting United States Attorney

Dated:  July 8, 2025                    */s/ Carolyn A. Almassian*
                                          CAROLYN A. ALMASSIAN
                                          Assistant United States Attorney
                                          330 Ionia Ave., NW, Ste. 501
                                          Grand Rapids, Michigan 49503
                                          (616) 456-2404
                                          Carolyn.Almassian@usdoj.gov
                                          Attorney for Defendant