IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

CHRISTINE SHELLENBARGER,

        Petitioner,             No: 1:25mc77

 vs.

UNITED STATES ATTORNEY'S OFFICE
FOR THE WESTERN DISTRICT OF MICHIGAN,

        Respondent.


Before:

        THE HONORABLE SALLY J. BERENS
          U.S. Magistrate Judge
          Grand Rapids, Michigan
          Monday, July 14, 2025
        Motion to Quash Proceedings

APPEARANCES:

        MR. TIMOTHY VERHEY, U.S. ATTORNEY
        By:  MS. CAROLYN ANN ALMASSIAN
        330 Ionia Avenue, NW
        P.O. Box 208
        Grand Rapids, MI 49501-0208
        (616) 808-2028

              On behalf of the Petitioner;

        MS. REGAN ANN GIBSON
        Varnum LLP
        333 Bridge Street NW
        P.O. Box 352
        Grand Rapids, MI 49501
        (616) 336-7000

              On behalf of the Respondent.


TRANSCRIBED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

07/14/2025

2:05 p.m.

THE COURT:  We are on the record in the United States District Court in the Western District of Michigan and speaking is United States Magistrate Judge Sally Berens.  We are on the record in case 1:25mc77, Shellenbarger versus United States Attorney's Office for the Western District of Michigan, and we are on the record for a hearing on Petitioner's Petition to Quash Civil Investigative Demand WDMI-CID-25-31.  So let's start with appearance for counsel.  For the Petitioner?

MS. GIBSON:  Good afternoon, Your Honor.  Regan Gibson on behalf of Christine Shellenbarger.

THE COURT:  And for the government?

MS. ALMASSIAN:  Good afternoon, Your Honor.  Carrie Almassian on behalf of the government.

THE COURT:  All right.  Good afternoon to both of you.

I have reviewed the petition and the response.  I do have some questions about it for both of you.  I would note that in these types of cases they get -- they come into the court as an MC case, which means it gets assigned to a Magistrate Judge, but it probably is an instance where you are entitled to have a District Court Judge review unless you consent, and so we have requested the assignment of a District Court Judge in the case.  So as a result, I think I have to do this by, per a recommendation as opposed to issuing an opinion

or an order.  So I want to prepare you for the fact that I am probably not going to rule on the record today.  I just want to ask -- have a hearing on the issue and have some questions.

It makes some sense to start, I think, with Ms. Gibson since you have had the benefit of the government's response.

MS. GIBSON:  Thank you, Your Honor.

I'll try not to repeat everything in our petition, but I do --

THE COURT:  You can assume that I have read it carefully.  I have read most of the cases.  I am going to ask you both some questions about some cases because what I -- and this is just jumping ahead a little bit, but what I think may be missing from both briefs, although you have stated Sabit that you cite in your brief, but there is not a lot at least that I have been -- as I have been reading on exactly this type of situation where it's e-mails that are being requested, which strikes me as being particularly an area where the Fifth Amendment could particularly notably raise its head.  So anyway, that's just --

MS. GIBSON:  You fully anticipated my argument, Your Honor.  In fact, one of the things I wanted to point out to you is that now, I know that you have read all the cases, and it sounds like you noticed, as I did, that these aren't -- the government hasn't cited any cases where the foregone conclusion doctrine was cited -- was used to deal with a request for

e-mailed communications.  The vast majority of the cases cited -- and I -- and I think some of this just has to do with the -- maybe the case law that's available in the foregone conclusion doctrine tends to relate to IRS summons to taxpayers, but those are not an analogous situation.

The only case that the government cited, and I am going to -- I am just looking in my notes because it's one of the In Re: Grand Jury Subpoena cases, and I don't want to give you the wrong one, but the only case where e-mailed communications were even requested is in the -- excuse me, In Re: Grand Jury Subpoena case dated April 18th, 2003.  That's a Ninth Circuit case from 2004.  And there, as here, the government -- and the government was aware of, I believe, an e-mail address that was used, but in that case, the parties subpoenaed had also apparently given substantial admissions regarding the use of the e-mail address in an interview, and the government still found that the e-mails were requested by -- were protected by the Fifth Amendment because the government's subpoena was still far too broad.

In this case I think if the -- if the Court has reviewed the CID, you'll see that while they do reference Ms. Shellenbarger's e-mail address as well as communications with specific individuals, Nicholas, Stacy and Dennis Boersen, as well as it appears, although the wording is somewhat confusing, communications regarding the Boersens with

Ms. Shellenbarger's daughter, Janelle Warnemuende, who is an underwriter, not an insurance agent as the CID suggests, but it appears to request communications with her as well.  And I think the major hole, as far as the foregone conclusion doctrine in the government's pleading, is that while the government certainly knows that Ms. Shellenbarger has used that e-mail address -- they have -- they have submitted a couple of e-mails where they -- her -- that e-mail address is indicated as being used for business purposes, what it -- what they don't have any prior knowledge of and what prevents them from being able to identify the documents with reasonable particularity is that there is no evidence that Ms. Shellenbarger used the e-mail address to communicate with the Boersens.  Even if she is using it for some business purposes, it is not a foregone conclusion that the e-mail address is being used to communicate with these specific individuals and on these specific topics.

The CID is asking for communications -- the investigation is stated as relating just to the two New Heights Farm entities, but in fact, the first request in the CID is any communication with any of the Boersens for a seven-year period involving federally backed crop insurance, and so that isn't limited to those specific entities.

The Boersens have farmed under other entities in the past, and so the government is effectively saying that they suspect that these e-mails exist because Ms. Shellenbarger uses

a hotmail address for business purposes, but it's certainly not a foregone conclusion that they do, and for Ms. Shellenbarger to go through her e-mail and identify any documents that may be responsive to that subpoena, it is requiring her to use the contents of her mind to both identify who the document -- what the communications are relating to and who she is communicating with, and that's even more true when you are talking about communications with her daughter, which, with whom I'm sure you can imagine she has a number of communications that have nothing to do with the Boersens or anyone else, but --

THE COURT:  But let me ask you a hypothetical.

MS. GIBSON:  Sure.

THE COURT:  It seems to me that the way the Fifth Amendment attaches here is in, as you say, her using the contents of her brain to sort through her e-mails.  She clearly uses her e-mails for business, right?  That part at least is I think a foregone conclusion.  If they had asked it a little bit differently, if they had said all e-mails between your client and then listed the three Boersens or -- a couple of these entities, and they hadn't asked about having it be related to crop insurance or anything else, because one would expect that, you know, those e-mails were irrelevant to the investigation, I can imagine you might have an overbreadth argument, but would you have a Fifth Amendment argument if the only decision she had to make was e-mail, you know, identify e-mail within the

date range to/from?  Is there -- does that implicate the Fifth Amendment?

MS. GIBSON:  I think it still does, Your Honor.  I would agree that there is probably an overbreadth argument as well, but I think the Fifth Amendment is still implicated because the government doesn't have any knowledge that those communications exist.  Ms. Shellenbarger is still having to produce documents and effectively say, government, you were right, these are the communications that are out there, but they don't know that she's using those -- that e-mail address for business purposes to communicate with the Boersens.  I think that's the critical piece.  Certainly the business purposes, I think it's -- it is a foregone conclusion that she is using it for some business purposes, but not a foregone conclusion that she's using it for business purposes with those individuals.

For example, she could have -- she could communicate with the Boersens only by phone or via the mail.  It doesn't -- it isn't a foregone conclusion that she is communicating with them by e-mail.  I would also add that it's not clear from the government's response, but the CID itself asks for a lot of different kinds of communications that go far beyond e-mails. They are focused on the e-mails in the pleading I assume because they have more of an argument that they know that she uses the e-mail for business purposes, but certainly there is

no foregone conclusion that Ms. Shellenbarger has communicated with the Boersens via text messages, via letters, via memorandums, all of which are listed in the CID as part of the communications.  It's not clear to me as we sit here today whether the government is abandoning that portion of the request, because it isn't addressed in the pleading, but I just wanted to make sure that that is -- that -- that we note that for the record as well.

And I would just add to that there are, with regard to the scope of the request as we sit here today, in their response the government claims that it is just asking about New Heights and New Heights Farm.  I don't know if the government is narrowing their request or not, but the CID is certainly broader than that, and I think that it wasn't a hundred percent clear from their pleadings where they are.

THE COURT:  All right.  Any other argument you want to make before I move to Ms. Almassian?

MS. GIBSON:  Yes.  Just briefly, Your Honor.  With regard to the need for an in camera review, Ms. Shellenbarger is certainly happy to cooperate with that.  As far as the going document by document to identify the incriminating evidence, in this case it's -- I think that's going to be a particular challenge in part because not only -- first of all, I think it's undisputed, and I don't think Ms. Almassian is going to dispute this, that Ms. Shellenbarger has been under criminal

investigation for five years with no charges having been filed against anyone at all.  But she -- and we, her counsel, have been informed by the government on multiple occasions that the mere fact that she assists with applications or works with the Boersens in some way is in itself indicative of wrongdoing, and so ultimately, I think we would say that every one of -- and every one of these e-mails that does exist would be that causal link in the chain and would be incriminating.

That said, we are certainly happy, if the Court requests it, to submit the documents for in camera review, but we have not yet done so at this time in part because I think the court rules are a little bit silent on exactly how these petitions are supposed to proceed, and certainly we did not want to be filing a privilege log publicly with the Court, but we are happy to -- whatever the Court requests to be able to issue its opinion we are happy to do that.

THE COURT:  All right.  Thank you.

Ms. Almassian?

MS. ALMASSIAN:  So I agree with the Court's, you know, sentiment or concern that there just aren't cases about e-mails, and I did run into cases concerning e-mails.  They are just all in the nature of a corporate entity, and here Ms. Shellenbarger was operating under a corporate name for a very short period of time, and now she's not, and I, in doing research, realized that, you know, she is a default sole

proprietor, and that sort of removes that particular argument that I thought would maybe exist before.  And then I wasn't seeing a lot of e-mail cases other than the Sabit case, which I think is very distinguishable from the CID the government issued in that case, where here we are -- we're identifying both the sender and the recipient, which is -- is different from the Sabit case where that was -- that was not done in the subject nature of the communications.

So Ms. Shellenbarger is not having to extensively use her mind.  I know the Court gave the example of if we had removed the nature of the e-mails that -- does that make it part of the foregone conclusion but overbroad?  Actually, I think having the nature of the e-mail even makes it an easier task, because there'll be a subject line that makes it easy for her to say, you know, it's from me, just one of the Boersens. The subject line is going to be one of these entities or it's going to be crop insurance as opposed to something that might say something personal or something totally unrelated to her role with them and crop insurance.  So everything that could be identified is identified, including the date range.

I will note the CID is pretty clear that they are just looking for e-mails with Ms. Shellenbarger's daughter and her nature as -- we did say insurance agent, so I suppose that's incorrect if she was an underwriter, but we are not looking for any personal communications between her and her daughter.  Just

business communications, again, related to the Boersens that would be something identifiable in the search or subject line.

Again, much unlike the e-mails that in discussed in Sabit, where the person who received the CID had to actually identified who might have been someone who is related to this particular medical device company and did that fall within the CID?  Here we are taking out all of that guess work by identifying all of that.

THE COURT:  You are still asking -- I mean, you are still asking for at least some review that she has to do, right?  It's not simply a matter of, we know there will be -- this file exists and we need to you produce it.  It is, go through your e-mails, determine whether or not this is -- now, and it may be that there aren't any e-mails that are unrelated to the investigation or crop insurance, but, I mean, she is having to make some determination about that presumably in reviewing the e-mails.  Do you agree with that?

MS. ALMASSIAN:  I understand the Court's point that if there are personal ones that she wants to remove from it it might be an issue, but because the CID is so specific, I believe that she can identify those by a subject line of an e-mail and doesn't have to actually open it up and look at the contents of it in order to decide whether that's part of what the CID is requesting or not.

This also, like, you know, some of the other cases

talking about the CIDs, it's not a fishing expedition.  It's not thousands of page -- well, I shouldn't say that.  I don't know if it's thousands of pages, but we are not just, you know, throwing a fishing line out there and seeing what we catch.  We do know she uses this e-mail for business.  She -- the Spartan Insurance owner said that.  So it's a logical extension that within her e-mails she is e-mailing about with now Country Insurance about the Boersens that she would also be e-mailing with the Boersens and that she is conducting her business through this e-mail account that's going to have responsive documents.

THE COURT:  You know, this does seem like a law school issue spotter problem on -- of, you know, how to match this into the existing case law.

The other topic I wanted to ask you about, is you -- one of the other areas where testimony can -- or it can become testimonial is authentication, or authentication, excuse me, of the documents, and you -- you cite -- you know, and there are certificates under Federal Rule of Evidence 902(11), but this is different from those cases because the e-mails aren't being produced by Microsoft.  So Microsoft can't actually authenticate these.  Isn't her production of them essentially the authent -- doesn't that run afoul of the authentication part of the -- of the Fifth Amendment as well?

MS. ALMASSIAN:  Not in this case, because even if we

are not in a situation where we can have Microsoft authenticate it, we can have these authenticated through the e-mail recipient.

THE COURT:  That assumes that you have the e-mail recipient, that they are going to testify, and if some of these folks are under criminal investigation they may not also be able to -- or they may not be willing to testify to it, right?  Some of these recipients, you want them because they are also under criminal investigation.  Am I getting that right?

MS. ALMASSIAN:  I am not -- since I don't do the criminal cases I don't know.  I do know that there has been some activity, but I am trying not to communicate with any of the prosecutors on what's going on.

THE COURT:  I guess what I am saying is, we can't be certain in this case that the recipients necessarily will be able to authenticate the documents because it is possible that they would be -- want to assert their own Fifth Amendment privilege whether or not they are actually being investigated.

MS. ALMASSIAN:  Sure.  I think that's possible.  I don't necessarily agree with the Court that that's what the authenticate -- authenticity portion of the foregone conclusion is necessarily looking at.  It's can we authenticate it?  We do have a means of authenticating without her that would remove that act from her, so we are not going to rely on her.  I think in the end, whether we can get that authentication, is going to

be a separate issue.

THE COURT:  Okay.  I think I understand your argument. Anything else you wanted to argue today?

MS. ALMASSIAN:  I would just also ask for some type of an in camera review of at least if it's too numerous or at least of a, you know, a reasonable amount of -- I'm sorry, what was that.

THE COURT:  Did you say a sample or something along those lines?

MS. ALMASSIAN:  Sure.  Right.  To at least ascertain whether or not these are the business communications that we -- you know, we believe exist based on the documents we provided as exhibits.

THE COURT:  Ms. Gibson, do you have a sense of what the volume that we are talking about is?

MS. GIBSON:  Without, you know, acknowledging for the purposes of the CID that any documents exist, with that caveat, they are -- there -- it would be a relatively high volume I suspect.  I don't have an exact figure for the Court.

I would just note, however, the purpose of the in camera review isn't to verify whether the documents are what Ms. Almassian suspects exists.  The purpose of the in camera review is for incrimination.  I just want to be clear because they still have to know that they exist in advance.

THE COURT:  When you say high volume, can you give me

an order of magnitude?

MS. GIBSON:  I think we are talking about likely north of 2,000.

THE COURT:  Documents or pages?

MS. GIBSON:  Documents.  Yes.  Sorry.

THE COURT:  In some cases that would be a very small volume, and so that's why --

MS. GIBSON:  Sure.  I don't how inclined the Court is to doing in camera review in documents.  So I suspect --

THE COURT:  It's not any judge's favorite thing, I will tell you, but that's not say that we wouldn't --

MS. GIBSON:  We are not in the 50,000 like multi, multi gigabytes range of anything in this case.

THE COURT:  Okay.  From either of you, any additional comments you want to make or arguments you want to make? Ms. Gibson?

MS. ALMASSIAN:  Not from the government.

THE COURT:  I'll give you the last word if there is something else that you want to --

MS. GIBSON:  Just briefly, Your Honor, and I think you -- this was already covered by the Court's own statements, but as far as authentication goes, I think that the Court is correct that Microsoft is not really the issue here, because if Ms. Almassian sends a subpoena to Microsoft for all the communications, I am not sure that there is a lot

Ms. Shellenbarger could do about that, and certainly I don't think the Fifth Amendment is implicated in that case, but that's not what's happening here.  And in the course -- in the -- there is one of the cases that was cited by Ms. Almassian with regard to the verification, and I am just -- again, it's one of the In Re: Grand Jury cases, so I want to make sure I am getting this correct.  This is the In Re: Grand Jury Subpoena dated April 18th, 2003, that's that Ninth Circuit.  The Court noted that the authentication is just a small part of it as far as the evidentiary authentication, which is what the government's brief is focused on.  Hotmail can identify that those are the e-mails or that those are e-mails that were sent via hotmail should hotmail actually be subpoenaed and produce those documents.  They can't verify that they are the right e-mails and that they are responsive to the subpoena, and that's the contents of Ms. Shellenbarger's mind that she is being asked to use.  She is effectively being given a blank piece of paper and answering as if it was an interrogatory response.  Tell me every single e-mail you had with Dennis, Stacy and Nicholas Boersen.  The government does not have that information as they sit here today, and thus, she -- there -- it is not a foregone conclusion.  But that was all I have, Your Honor.

THE COURT:  All right.  Thank you.  That actually raises one more question that I have for Ms. Almassian.

Ms. Gibson indicated that there was no evidence that Ms. Shellenbarger used her hotmail account to communicate with the Boersens.  Is she correct about that?

MS. ALMASSIAN:  Correct.  Other than what we have attached, that's all we have to show is that that's the only -- that's the contact information she was provided on all the documents we have.

THE COURT:  All right.  All right.  Thank you both for your time and your argument and we'll get something out as soon as we can.

MS. ALMASSIAN:  All right.  Thanks.

MS. GIBSON:  Thank you, Your Honor.

THE COURT:  We'll be adjourned.

MS. ALMASSIAN:  Thank you.

(Proceeding concluded, 2:27 p.m.)

C E R T I F I C A T E


I certify that the foregoing is a transcript from the

Court Zoom Recording System digital recording of the

proceedings in the above-entitled matter to the best of my

ability.




/s/ _____

Paul G. Brandell, CSR-4552, RPR, CRR

U.S. District Court Reporter

399 Federal Building

Grand Rapids, MI  49503